UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANDREW DAVID HALL,

      Plaintiff,

v.                               Case No.  3:14cv140/MCR/CJK

C.O. MOORE., et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff, a prisoner convicted and sentenced to life for three counts of sexual battery, proceeding *pro se* and *in forma pauperis*, has filed a third amended civil rights complaint under 42 U.S.C. § 1983.  (Doc. 20).   Upon review of the third amended complaint, the court concludes that plaintiff's claims against defendants Moore, Diamond and Simpson should be dismissed for failure to state a claim upon which relief can be granted, and that plaintiff's claims against defendants Hood, Thornhill and Gielow should be remanded to the undersigned for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

      Plaintiff is an inmate of the Florida penal system currently confined at Jackson Correctional Institution.  Plaintiff was confined at Santa Rosa Correctional Institution ("Santa Rosa CI") at the time of the events giving rise to his complaint.  Plaintiff's

third amended complaint names as defendants six Santa Rosa CI officials: Correctional Officer Moore, Sergeant Diamond, Correctional Officer L. Hood, Sergeant R. Thornhill, Lieutenant W. Gielow and Nurse S. Simpson. (Doc. 20, pp. 1-3). Plaintiff's allegations are as follows. When plaintiff arrived at Santa Rosa CI on March 7, 2013, he had a Florida Department of Corrections Health Slip/Pass (hereinafter "medical pass") authorizing a number of restrictions, including an ankle brace, a cane, a low/bottom bunk and a low-tier cell. (*Id*., Statement of Facts ¶ 5). The pass was effective "From 3/7/12 To 3/7/13." (*Id*.; *see also* Doc. 1, Ex. A). When plaintiff arrived at his dormitory on March 7, 2013, he was met by defendants Moore and Diamond, who informed plaintiff he was assigned to a top-tier cell, 3208. (*Id*. ¶ 3). Plaintiff informed Moore and Diamond that he had a medical pass for a low-tier cell because he was disabled in one of his legs due to "paralysis injury to my nerves, a drop foot causing my right leg to not function normally, having to drag it, while struggling to walk." (*Id*. ¶ 4). Plaintiff then produced a copy of the medical pass. (*Id*. ¶ 5). Moore and Diamond advised plaintiff that the pass expired and was no longer valid. (*Id*. ¶ 6). Plaintiff argued that the pass was valid for March 7, 2013, and asked Moore and Diamond to honor it that day and confirm its effectiveness with the medical department. (*Id*. ¶ 7). Moore and Diamond refused. Diamond advised plaintiff, "You will be fine, you had no problem carrying your property." (*Id*. ¶ 9). Plaintiff disagreed and said his property had arrived at the dormitory by cart. (*Id*.). Diamond informed plaintiff he would hear no more complaints and ordered plaintiff to go upstairs to his cell. Moore concurred. (*Id*. ¶¶ 9-10). Plaintiff complied and climbed the stairs to his top-tier cell, although with difficulty. (*Id*. 11-12).

Thereafter, plaintiff submitted a sick call request concerning renewal of his medical passes. (*Id*. ¶ 22). On March 13, 2013, plaintiff was escorted to the medical station triage room to see medical practitioner M. Nichols. (*Id*. ¶ 23). Defendant Nurse Simpson took plaintiff's vital signs, during which plaintiff informed Simpson security personnel had ignored his low-tier pass and housed him in a top-tier cell. (*Id*. ¶ 25). Nurse Simpson responded that plaintiff would be seen by M. Nichols. (*Id*. ¶ 25). M. Nichols arrived, evaluated plaintiff and issued plaintiff a new medical pass, effective "From 3/13/13 To 3/13/14", for a low/bottom bunk, restricted activity, a low-tier cell, an AFO brace for plaintiff's right foot, shoe strings and soft shoes. (*Id*. ¶ 27; *see also* Doc. 1, Ex. B). Nichols gave plaintiff a copy of the medical pass. (*Id*. ¶ 28). Nichols also provided a copy of the medical pass to the security officers escorting plaintiff (defendants Hood and Thornhill) and told them to have plaintiff housed on a low tier. (*Id*. ¶ 28). Hood and Thornhill advised Nichols that the Classification Department, not the Security Department, was in charge of housing inmates, but that they would contact Classification to have plaintiff housed on a low tier. (*Id*. ¶ 29). Hood and Thornhill then returned plaintiff to his dormitory and ordered him to climb the stairs to his top-tier cell, despite plaintiff's protest. (*Id*. ¶¶ 30-31). Defendant Nurse Simpson came to plaintiff's cell that afternoon to dispense his medication. (*Id*. ¶ 41). Plaintiff informed Simpson that security ignored the low-tier housing pass. Simpson responded that she would contact Classification. (*Id*. ¶ 42).

Plaintiff remained assigned to a top-tier cell for several days and complained repeatedly to security staff that his housing assignment did not comply with his medical pass. Plaintiff was ignored. (*Id*. ¶ 32). Plaintiff stopped defendant

Lieutenant Gielow (the head of security for plaintiff's dormitory) during a security check, complained about his top-tier cell assignment and displayed a copy of his medical pass.   Gielow asked plaintiff if his leg was broken and, after plaintiff described his condition, Gielow responded, "This is not the Hilton Hotel, we don't cater to monkey business, so stay off my door and don't let me hear about your whining to my officers anymore."  (*Id*. ¶ 32).

Defendant Simpson came to plaintiff's cell on several occasions after March 13, 2013, to  administer plaintiff's medication.  (*Id*. ¶ 42).  Each time, plaintiff complained to Simpson that he was not supposed to be housed on the top tier, "resulting in no avail."  (*Id*.).

On April 15, 2013, at 7:40 a.m., plaintiff exited his cell to attend the dayroom.  (*Id*. ¶ 33).  Defendant Thornhill handcuffed plaintiff, fastened the handcuffs to a security belt locked around plaintiff's waist, and ordered plaintiff to walk down the stairs and meet Correctional Officer Ritchie.  (*Id*.).  Plaintiff alleges that after descending several steps, his disabled leg collapsed underneath him and he fell thirteen steps to the concrete floor.  (*Id*. ¶ 34).  During the fall, plaintiff's head struck the steel stairs numerous times and slammed onto the concrete floor at the bottom of the stairs.  Plaintiff temporarily lost consciousness and was awakened by Officer Ritchie, who told plaintiff not to move.  Plaintiff's disabled leg was twisted and shaking.  Plaintiff suffered pain in his head, back and right leg, and numbness in his feet.  (*Id*. ¶¶ 34, 35).  Plaintiff was taken to the medical department where he was evaluated by M. Nichols.  (*Id*. ¶ 35).  Nichols admitted plaintiff to the infirmary where plaintiff remained for three days.  (*Id*. ¶ 36).  Plaintiff was provided medication for pain and an x-ray of his leg.  The x-ray "came back negative."  (*Id*.).

Upon plaintiff's discharge, he was assigned to a low-tier cell.  (*Id.* ¶ 37).  Defendant Thornhill wrote plaintiff a disciplinary report for disobeying a verbal order, asserting that on April 15, 2013, he ordered plaintiff to wait for security to escort him down the stairs but plaintiff disregarded the order and walked down the stairs unescorted.  (*Id.* ¶ 38).

Based on the foregoing allegations, plaintiff claims the defendants were deliberately indifferent to a substantial risk of serious harm to his health and safety in violation of the Eighth Amendment.  (*Id.*, p. 7).  As relief, plaintiff seeks $50,000 in punitive damages and $50,000 in compensatory damages from each defendant in his or her individual capacity.  (*Id.*, pp. 2 (continuation page) and 7).

DISCUSSION

Title 28 U.S.C. § 1915 mandates that the district court dismiss an *in forma pauperis* action if the court determines that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  The court must read plaintiff's *pro se* allegations in a liberal fashion.  *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997).  In determining whether the complaint states a claim upon which relief may be granted, the court accepts all well-pleaded factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  There are a few exceptions to this rule, such as where the

facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Further, only <u>well pleaded</u> factual allegations are taken as true and only <u>reasonable</u> inferences are drawn in favor of the plaintiff. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (holding that courts must follow the Supreme Court's "'two-pronged' approach' of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009))); *see also Randall v. Scott*, 610 F.3d 710, 709-10 (11th Cir. 2010) (holding that a district court determining whether to dismiss a complaint for failure to state a claim "shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations."); *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)[1] (stating that "unwarranted deductions of fact are not admitted as true"). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570, 127 S. Ct. at 1974.

Taking the allegations of plaintiff's third amended complaint as true and construing them in the light most favorable to plaintiff, the complaint fails to state a plausible Eighth Amendment claim for compensatory or punitive damages against defendants Moore, Diamond or Simpson. The Eighth Amendment's proscription of cruel and unusual punishment mandates that prison officials "provide humane conditions of confinement," ensuring that inmates receive adequate food, shelter, clothing and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994). Nevertheless, "the Eighth Amendment does not authorize judicial reconsideration of every governmental action affecting a prisoner's well-being. . . ." *Redding v. Georgia*, 557 F. App'x 840, 843 (11th Cir. Feb. 18, 2014) (*citing Hudson v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992)). A prisoner challenging a condition of confinement must

make a two-prong showing: "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (*quoting Farmer*, 511 U.S. at 834, 114 S. Ct. 1970). With regard to the first prong (the objective component), a prison condition is unconstitutional only if it deprives the plaintiff of a human need, *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (*citing Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1994)), or otherwise "'pose[s] an unreasonable risk of serious damage to his future health' or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (*quoting Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)). The second prong or subjective component requires that "the official had a 'sufficiently culpable state of mind.'" *Thomas*, 614 F.3d at 1304 (*quoting Farmer*, 511 U.S. at 834). "[I]n both prison conditions and medical needs cases, the relevant state of mind is deliberate indifference." *Id*. (*citing Wilson*, 501 U.S. at 303). Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (quotations omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff's claims against defendants Moore and Diamond are based on their refusal to honor the low-tier pass on March 7, 2013, and requiring plaintiff to climb the stairs that day. Plaintiff's allegations do not meet the objective or subjective

prongs of an Eighth Amendment claim, because:  (1) plaintiff has not shown that requiring him to climb the stairs on a single occasion posed a substantial risk of serious harm to his health or safety; and (2) plaintiff has not shown that Moore and Diamond acted unreasonably in determining the pass expired and in relying on their personal observations of plaintiff to determine he was capable of climbing the stairs on that occasion.  *See, e.g.*, *Redding*, 557 F. App'x at 844 (holding, in the context of prison officials' assigning disabled prisoner to top bunk contrary to his medical profile which indicated need for bottom bunk:  "It may have been negligent to assign [the prisoner] a bunk contrary to his profile, but an Eighth Amendment clam requires conduct rising to a level above even gross negligence.  This was not shown here, as [the prisoner] did not allege facts showing a culpable state of mind on the defendants' part." (citation omitted)).

Even if plaintiff's allegations were sufficient to state an Eighth Amendment claim against Moore and Diamond, plaintiff would be precluded from recovering the relief he seeks against these defendants (compensatory and punitive damages), because their refusal to accommodate plaintiff's medical restriction on that single date, March 7, 2013, did not cause plaintiff any physical injury.  *See* 42 U.S.C. § 1997e(e) (""No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Harris v. Garner*, 190 F.3d 1279, 1287-88 (11th Cir. 1999) ("*Harris I*"), *vacated in part and reinstated in part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc) ("*Harris II*") (affirming district court's dismissal, under 42 U.S.C. § 1997e(e), of prisoners' compensatory and punitive damages claims arising from prison officials' alleged unconstitutional

conduct, where prisoners alleged no physical injury arising from that conduct); *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury). Plaintiff was warned of these deficiencies in an amend order (doc. 15), but has not adequately amended his claims or his demand for relief. Plaintiff's claims against defendants Diamond and Moore should be dismissed.

Plaintiff seeks to hold defendant Nurse Simpson liable for the Classification Department's failure to promptly reassign plaintiff to a low-tier cell, on the theory that Simpson "is a professional health gatekeeper and acted with deliberate indifference and was aware of my serious medical need and the serious risk that my health and safety was in, but chose to disregard my safety. . . ." (Doc. 20, Statement of Facts ¶ 43). Plaintiff's allegations do not reasonably support an inference that Simpson disregarded plaintiff's safety. Nurse Simpson responded to plaintiff's complaint by advising him she would contact the Classification Department. The fact that plaintiff was not promptly reassigned does not reasonably support an inference that Simpson did nothing or that she caused the delay. The court takes judicial notice of the Florida Department of Corrections' rules which provide that Classification personnel are responsible for housing assignments, *see* FLA. ADMIN. CODE r. 33-601.209(3) (providing that the Institutional Classification Team is responsible for housing decisions at a facility), and that Security personnel are responsible for enforcing medical passes, *see* r. 33-602.101(9) (providing that inmates with specific medical restrictions shall not be assigned any activity until

approval is given by the attending physician or clinical associate); *see also* Doc. 12, Ex. E (institutional response to plaintiff's formal grievance against Nurse Simpson and M. Nichols, stating: "The issuing of medical passes is medical's responsibility based on the clinician[']s evaluation and judgement.  The enforcement of the passes in the dorms and on the compound is the responsibility of security.").  As plaintiff fails to plead enough factual content showing it is plausible Nurse Simpson's action or inaction caused the delay in the Classification Department's reassigning plaintiff to low-tier housing, plaintiff's claims against Simpson should be dismissed.

Accordingly, it is respectfully RECOMMENDED:

1.  That plaintiff's claims against defendants' Moore, Diamond and Simpson be DISMISSED without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

2.  That this matter be remanded to undersigned for further proceedings on plaintiff's Eighth Amendment claims against defendants Hood, Thornhill and Gielow.

At Pensacola, Florida this 16th day of December, 2014.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).